**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

JOSE PEPPER'S RESTAURANTS, LLC     )
and EDWARD J. GIESELMAN,              )
                                         )
      Plaintiffs,                        )
                                         )
v.                                            )     Case No. 2:21-cv-2506
                                         )
ZURICH AMERICAN INSURANCE       )
COMPANY,                             )
                                         )
      Defendant.                       )

<u>**DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS COUNTS II AND III OF PLANTIFFS'
AMENDED COMPLAINT**</u>

Defendant Zurich American Insurance Company ("ZAIC") states the following in support

of its Motion to Dismiss Counts II and III of Plaintiffs Jose Pepper's Restaurants, LLC's

("Pepper's") and Edward J. Gieselman's ("Gieselman") (collectively, the "Plaintiffs") First

Amended Complaint ("Amended Complaint") for failure to state claims upon which relief may be

granted[1]:

---

[1] A partial motion to dismiss tolls the time for answering any remaining counts of the Complaint. *See In re Vaughan Co., Realtors*, 477 B.R. 206, 226 (Bankr. D.N.M. 2012) ("The large majority of courts addressing this issue have held that when a defendant timely files a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., Rule 12(a)(4)(A) extends the time to file an answer as to all claims, including those not addressed by the motion to dismiss. … This Court agrees with that holding."); *Talbot v. Sentinel Ins. Co., Ltd.*, No. 2:11-CV-01766-KJD, 2012 WL 1068763, at *4 (D. Nev. Mar. 29, 2012) (surveying case law pertaining to partial Rule 12(b)(6) motions; *Low v. Chu*, No. 09-CV-0398-CVE-PJC, 2009 WL 4892600, at *1 (D. Okla. Dec. 14, 2009); *Kent v. Green*, No. 07-cv-02202-ZLW-MJW, 2008 WL 150060, at *1 (D. Colo. Jan. 11, 2008) (finding that a partially dispositive Rule 12 motion altered the responsive pleading date under Rule 12(a)(4)); *see also* 5B Charles Wright et al., *Fed. Prac. & Proc. Civ.* § 1346 (3d ed. 2019 update). Out of an abundance of caution, ZAIC nonetheless generally and specifically denies all allegations of the Plaintiffs' Amended Complaint and preserves and affirmatively asserts all available affirmative defenses pending a decision on this Motion.

1

4886-7979-4437

## INTRODUCTION

This lawsuit arises out of a dispute about the coverage under a policy of insurance issued by ZAIC to Pepper's, which provided coverage as set forth in the Employment Practices and Third Party Discrimination Liability Coverage Part but did not provide coverage for violations of the Fair Labor Standards Act and state law equivalents.

ZAIC issued Policy Number MPL 0239201-02 to Pepper's for the policy period beginning on April 1, 2020 and ending on April 1, 2021 (the "Policy"). On July 7, 2020, Kira Florece, on behalf of herself and others similarly situated, filed a complaint against Plaintiffs, styled *Kira Florece on behalf of herself and others similarly situated v. Jose Pepper's Restaurants, L.L.C. and Edward J. Gieselman*, in the United States District Court for the District of Kansas, Case No. 2:20-cv-02339 (the "Underlying Lawsuit").

After the plaintiff in the Underlying Lawsuit filed her complaint, Plaintiffs allege to have submitted a claim for defense and indemnity of the Underlying Lawsuit under the Policy. (Doc. 13 at ¶ 16). Plaintiffs allege that ZAIC breached its duty to defend and indemnify as defined under the Policy, refused to settle the Underlying Lawsuit, failed to perform its obligations pursuant to the Policy despite allegedly promising otherwise, and intentionally inflicted emotional distress upon Gieselman by allegedly breaching the Policy. (*See generally* Doc. 13 at ¶¶ 54–91). ZAIC denies all allegations against it.

Even taking all Plaintiffs' allegations as true, however, Plaintiffs again fail to state claims upon which this Court can grant relief. Count II of Plaintiffs' Amended Complaint is duplicative of their breach of contract claim. Count III of Plaintiffs' Amended Complaint is a cause of action for tort based off a breach of contract, and as such, there is no basis for relief. Furthermore, even Plaintiffs' new allegations purporting to support emotional distress still do not meet the high

4886-7979-4437

pleading bar to establish outrageousness.

## STANDARD OF REVIEW

To avoid dismissal of any claim under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *State v. Nat'l Indian Gaming Comm'n*, 151 F. Supp. 3d 1199, 1209 (D. Kan. 2015) (citations omitted). "Although the Court must assume that the factual allegations in the complaint are true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 1210 (citations omitted).  Similarly, a complaint must state a claim for relief that rises above the "speculative level." *Twombly*, 550 U.S. at 555–56.

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).  "Also, a court 'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Nat'l Indian Gaming Comm'n*, 151 F. Supp. 3d at 1210 (citations omitted).  "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *Myers v. Supreme Court of Kan.*, No. 05-4077-JAR, 2006 WL 276399, at *3 (D. Kan. Feb. 1, 2006) (citation omitted).

4886-7979-4437

## <u>ARGUMENT</u>

**I.   PLAINTIFFS' PROMISSORY ESTOPPEL COUNT FAILS BECAUSE IT IS BASED ON A CONTRACT THAT WAS SUPPORTED BY CONSIDERATION.**

It is evident from a review of Plaintiffs' Amended Complaint that Plaintiffs' promissory estoppel claim depends on the policy of insurance issued to Pepper's and Pepper's' belief that ZAIC breached its promises thereunder.

Promissory estoppel may be utilized to enforce a promise if a plaintiff can show: (1) the promisor reasonably expected the plaintiff to act in reliance on the promise, (2) the plaintiff acted as could reasonably be expected in relying on the promise, and (3) a refusal of the court to enforce the promise would sanction the perpetration of fraud or result in other injustice. *See Ayalla v. Southridge Presbyterian Church*, 152 P.3d 670, 677 (Kan. Ct. App. 2007) (citing *Templeton v. Kansas Parole Bd.*, 27 Kan. App. 2d 471, 474-75 (2000)).  However, promissory estoppel is not proper where the promise is contractual rather than gratuitous.  *Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1167 (D. Kan. 1990). Promissory estoppel is an alternative theory of recovery to a breach of contract claim because it is an equitable doctrine used to enforce promises that are noncontractual and otherwise unenforceable.  *Id.*

In *Pizza Management*, 737 F. Supp. at 1168, the court dismissed a promissory estoppel count because it was based on an actual agreement. The court held:

> Plaintiffs do not allege reliance upon promises found in unenforceable contracts or upon promises not found in enforceable contracts. ***Promissory estoppel is applicable only in the absence of an otherwise enforceable contract.*** Plaintiffs, instead, base their promissory estoppel claim on promises said to already exist in enforceable agreements. Because they assert reliance upon promises allegedly expressed in viable agreements, plaintiffs' promissory estoppel claim is necessarily duplicative of their breach of contract claims. Defendants' motion to dismiss count XII is granted.

*Id.* (emphasis added).

Similarly, in *Decatur County Feed Yard, Inc. v. Fahey*, 974 P.2d 569, 577–78 (Kan. 1999),

4

4886-7979-4437

the Kansas Supreme Court rejected application of promissory estoppel where there was "an agreement supported by consideration on either side, and both parties had performed under the agreement for some period of time." *Id.* at 578. Promissory estoppel is a "substitute for consideration" to "enforce an otherwise unenforceable promise." *Id.*

Plaintiffs allege that there is a valid and enforceable contract. (Doc. 13 at ¶ 7). That allegation must be taken as true even if it were in dispute—which it is not. *See Nat'l Indian Gaming Comm'n*, 151 F. Supp. 3d at 1210.

The existence of an agreement between the parties—an agreement that Plaintiffs believe, however incorrectly, that ZAIC breached and that they seek to enforce—informs the remainder of Plaintiffs' allegations, including in Count II. Plaintiffs allege that they "tendered" the Underlying Lawsuit "for defense and indemnity pursuant to the Policy" and that they "belie[ved] that Zurich would defend and indemnify Jose Peppers and Gieselman under the Policy." (Doc. 13 at ¶¶ 64, 66). The relief Plaintiffs seek in Count II is for ZAIC to "be estopped from denying coverage under the Policy …". (*Id.* at ¶ 74). Indeed, throughout each count of the Amended Complaint, Plaintiffs tie their claimed injuries to the ZAIC policy. (*See id.* at ¶¶ 7, 10, 12, 14, 64, 66, 73–74, 76–77, 79, 85).

Plaintiffs' claim for promissory estoppel thus derives from a valid and enforceable contract, which is not permitted under Kansas law. *Pizza Mgmt., Inc.*, 737 F. Supp. at 1168; *Decatur Cnty. Feed Yard, Inc.*, 974 P.2d at 578. Count II is duplicative of Count I, and, accordingly, should be dismissed.

II. **GIESELMAN'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS COUNT FAILS BECAUSE A BREACH OF CONTRACT CANNOT CREATE THE BASIS FOR TORT LIABILITY AND PLAINTIFFS DO NOT OVERCOME THE HIGH BAR TO PLEAD INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

A. **Gieselman's Claim Against ZAIC Is Prohibitively Based on Performance**

**Under a Contract.**

Whether a claim sounds in tort or contract is determined by the nature and substance of the facts alleged in the pleadings. *David v. Hett*, 270 P.3d 1102, 1114 (Kan. 2011). Contract claims are based on the "material failure of performance of a duty arising under or imposed by agreement." *Malone v. Univ. of Kan. Med. Ctr.*, 220 Kan. 371, 552 P.2d 885, 888 (1976). Tort claims are based on the "violation of a duty imposed by law," which is "independent of contract." *Id.*

Kansas courts have consistently refused to hold that a simple breach of contract creates a basis for tort liability. *See Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22, 23-24 (10th Cir. 1984) (the existence of a contractual relationship bars the assertion of tort claims covering the same subject matter governed by the contract); *see also Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1116 (10th Cir. 2005) (the existence of any tort liability cannot conflict with any contractual duties between the parties); *Hess Oil Virgin Islands Corp. v. UOP, Inc.*, 861 F.2d 1197, 1200 (10th Cir. 1988) (noting that *Isler* holds "no tort duty can be imposed on a party where that party's same duties and rights are specifically defined by contract"); *Ford Motor Credit Co. v. Suburban Ford*, 237 Kan. 195, 203, 699 P.2d 992, 998-1000 (1985) (quoting *Isler* with approval and holding that tort duties may not be imposed where the party's duties and rights are specifically defined by contract). In the absence of such a rule, every alleged breach of contract could give rise to tort liability, blurring the lines between contractual duties and tort duties, and creating an unwarranted judicial intrusion into the marketplace. *Isler*, 749 F.2d at 23-24. The only exceptions to the holding in *Isler* that a mere breach of contract does not create tort liability are fraud and unconscionability. *Id.*

Gieselman does not plead any duty that ZAIC owed to Plaintiffs that is independent of the ZAIC policy and imposed by law. (*See* Doc. 13 at ¶¶ 10–12, 14, 76–77, 79). Instead, Gieselman

6

bases his tort claim for emotional distress on what Plaintiffs believe they are owed under the ZAIC policy. (*See id.*). Stated differently, Gieselman alleges that ZAIC materially failed to perform under the parties' agreement. That bars his attempt to seek liability in tort.

**B.**     **Gieselman Still Does Not Meet the Pleading Standard for Outrageous Conduct.**

Even if Gieselman had pled a viable tort claim, he still does not meet the standard to plead an intentional infliction of emotional distress claim. "Kansas has established a very high standard for the common law tort of intentional infliction of emotion distress." *Glover v. NMC Homecare, Inc.*, 106 F. Supp. 2d 1151, 1170 (D. Kan. 2000) (quoting *Dunegan v. City of Council Grove, Kan.*, 77 F. Supp. 2d 1192, 1208 (D. Kan. 1999)). To establish a prima facie case of outrage, plaintiff must show: (1) defendant's conduct was intentional or in reckless disregard of the plaintiff; (2) defendant's conduct was extreme and outrageous; (3) there is a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress is extreme and severe. *Id.* at 1171. It is a conduct and result test. In other words, the conduct should "reasonably be regarded as [ ] extreme and outrageous" and the resulting emotional distress should be extreme and severe such that the law should intervene because "no reasonable person should be expected to endure it." *Okoye v. Medicalodge North*, 45 F. Supp. 2d 1118, 1125 (D. Kan. 1999) (citing *Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1264 (10th Cir. 1998); *Smith v. Welch*, 265 Kan. 868, 875, 967 P.2d 727, 733 (1998)); *Wood v. City of Topeka, Kan. Housing Auth.*, 90 F. Supp. 2d 1173, 1193 (D. Kan. 2000) (quoting *Taiwo v. Vu*, 249 Kan. 585, 822 P.2d 1024, 1029 (1991)) (alleged conduct must be "atrocious and utterly intolerable in a civilized society.").

Gieselman does not meet the standard for outrageousness because his argument, paraphrased, is that ZAIC inflicted emotional distress on him because it construed the valid and enforceable contract not to apply to the Underlying Lawsuit. If every disagreement about the

7

meaning of a contract could yield an emotional distress claim, the courts would surely be flooded.

Even Gieselman's particular health circumstances do not warrant an exception converting a contractual disagreement into socially intolerable conduct because Plaintiffs' allegations establish that their decision to risk a "business-ending judgment" was not based (or solely based) on their misunderstanding of the Zurich policy. Plaintiffs assert that "Zurich defending and indemnifying Mr. Gieselman and Jose Peppers in the Collective Action was the only thing stopping Mr. Gieselman and Jose Peppers from potentially incurring a disastrous, business-ending judgment." (Doc. 13 at p. 16, ¶ 84). Plaintiffs describe that "business-ending judgment" as potentially "exceeding $12 million." (*Id.* at ¶ 80). Yet, at the same time, Plaintiffs concede that the policy's limits of insurance, even if applicable, were $4 million. (*Id.* at ¶ 9). That is an ***$8 million gap***—an $8 million gap that Plaintiffs do not allege ZAIC agreed to pay should that result occur. (*See id.* at ¶¶ 9, 80). Plaintiffs also allege that they "believed, and continue[] to believe, the claims … were and continue to be without merit." (*Id.* at ¶ 21). Plaintiffs' own allegations underscore the inconsistencies in their claim that they believed the "maximum exposure" to be a $50,000 self-insured retention and that they elected not to settle early because of ZAIC's claimed conduct. (*Id.* at ¶¶ 21, 79). Accordingly, Plaintiffs do not plead sufficient allegations establishing that ZAIC's claimed conduct in construing a contract is extreme and outrageous.

Plaintiffs' own contradictions also inform the analysis of the claimed outrageousness of Gieselman's claimed injuries. Gieselman never alleges why Plaintiffs had to settle a claim that Plaintiffs believed had no merit in order to save the business. (*See generally* Doc. 13). Indeed, there is no indication of any adverse finding that forced Plaintiffs into settlement. (*See id.*). Tying the decision to settle (and Gieselman's claimed anxiety arising therefrom) to the avoidance of a potential $12 million adverse verdict is insufficient to establish that ZAIC caused Gieselman

distress so severe that no reasonable person should be expected to endure it.  ZAIC never had any obligation to pay $12 million, which means Gieselman had to have accepted that risk when he chose not to consider earlier resolution.  (*Id.* at ¶¶ 9, 21).

Therefore, Gieselman has not met the standard to state a claim for intentional infliction of emotional distress, and this Court should dismiss Count III.

## CONCLUSION

A contract is at the heart of this matter.  If it were not, Plaintiffs would not have referred to the contract—the policy of insurance—in every single claim of their Amended Complaint.  As a result, Plaintiffs cannot pursue a promissory estoppel claim nor a tort claim based on a claimed breach of performance under the contract.  Furthermore, Gieselman still does not plead allegations establishing outrageousness.

For all the reasons set forth herein, this Court should dismiss Counts II and III of Plaintiffs' Amended Complaint.

Dated: December 17, 2021                            Respectfully submitted,


                                                   *s/ Larry D. Fields*
                                                   Larry D. Fields               KS# 15753
                                                   Meredith A. Webster           KS# 25103
                                                   **KUTAK ROCK LLP**
                                                   Two Pershing Square
                                                   2300 Main Street Ste. 800
                                                   Kansas City, MO 64108
                                                   (816) 960-0090 (Telephone)
                                                   (816) 960-0041 (Facsimile)
                                                   Larry.Fields@Kutakrock.com
                                                   Meredith.Webster@Kutakrock.com
                                                   **ATTORNEYS    FOR    DEFENDANT
                                                   ZURICH   AMERICAN   INSURANCE
                                                   COMPANY**

9

4886-7979-4437

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2021, a true and correct copy of the above and foregoing *Defendant Zurich American Insurance Company's Memorandum in Support of Its Motion to Dismiss* was filed with the Clerk of the Court of Kansas by using the CM/ECF electronic filing system, which will send notification of such filing to the following counsel of record:

       Shannon D. Johnson
       Julie E. Parisi
       SEIGFREID BINGHAM, P.C.
       2323 Grand Boulevard, Suite 1000
       Kansas City, MO 64108
       sjohnson@sb-kc.com
       jparisi@sb-kc.com
       ATTORNEYS FOR PLAINTIFF

*s/ Larry D. Fields*
Attorney for Defendant

10

4886-7979-4437