**In the United States District Court
for the District of Kansas**

―――――――――

Case No. 21-cv-02506-TC-GEB

―――――――――

JOSE PEPPER'S RESTAURANTS, LLC, ET AL.,

*Plaintiffs*

v.

ZURICH AMERICAN INSURANCE COMPANY,

*Defendant*

―――――――――

**MEMORANDUM AND ORDER**

Plaintiffs Jose Pepper's Restaurants, LLC, and its owner, Edward Gieselman, brought this suit against their insurer, Defendant Zurich American Insurance Company, to recover for liabilities and expenses incurred in a labor and wage dispute with employees. Doc. 13. Plaintiffs assert claims for breach of contract, promissory estoppel, and intentional infliction of emotional distress. Zurich moved to dismiss the latter two (Counts II and III of the Amended Complaint). Doc. 18. For the following reasons, Zurich's motion is granted in part and denied in part.

**I**

**A**

To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" from each named defendant. Rule 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Tenth Circuit has summarized two "working principles" that underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, the Court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Kan. Penn Gaming*, 656 F.3d at 1214. Second, the Court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

1

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts viewed in the light most favorable to the claimant must move the claim from merely conceivable to actually plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). The nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

## B

Jose Pepper's purchased a one-year "Employment Practices and Third Party Discrimination Liability" policy from Zurich. Doc. 13 at ¶ 7; *see* Doc. 1-1 at 18–72 (policy).[1] Under the policy, Zurich agreed to insure Jose Pepper's and its owner, Gieselman, against liabilities and expenses arising out of certain types of employment-practices claims. Doc. 13 at ¶ 11. The policy defines those covered occurrences to include claims for breach of employment contract, discrimination, and employment-related torts like wrongful termination, failure to hire, workplace harassment, and retaliation. Doc. 1-1 at 30. The policy had an aggregate limit of $5,000,000. Doc. 13 at ¶ 9.

---

[1] Prior to removal to federal court, Plaintiffs' state-court petition attached and incorporated by reference a copy of the policy with Zurich. Doc. 1-1 at ¶ 7 & Ex. 1. Like the Petition, the Amended Complaint refers to a copy of the policy "attached hereto as Exhibit 1," but it did not reattach the policy. Doc. 13 at ¶ 7. Documents referred to in a complaint may be considered on a motion to dismiss if they are central to a plaintiff's claims and the parties do not dispute their authenticity. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Even though it was not reattached to the Amended Complaint, the policy will be considered when evaluating Defendant's Rule 12 motion because the parties do not dispute the authenticity of the policy attached to the original petition, the document is central to Plaintiffs' claims, and the federal rules permit liberal incorporation by reference, Fed. R. Civ. P. 10(c).

In July 2020, a Jose Pepper's employee sued the company and Gieselman in a collective action for violations of the Fair Labor Standards Act (FLSA). Doc. 13 at ¶ 15. Jose Pepper's soon submitted a claim to Zurich for defense and indemnity of the collective action. Zurich acknowledged receipt and assigned an agent, Brett Carrick. *Id.* at ¶¶ 16–17. Zurich also informed Jose Pepper's that once Zurich had an opportunity to review the claim, it would provide an explanation of coverage. *Id.* at ¶ 18. Jose Pepper's and Gieselman were assigned an attorney who began collaborating with Carrick on defense strategy, expenses, and potential liability. *Id.* at ¶¶ 19–20.

Not long into the defense, the attorney warned Zurich that defense costs would quickly exceed the self-insured retention limit for Jose Pepper's (and thus trigger Zurich's obligations). Doc. 13 at ¶ 20. At that time, the attorney also sought approval from Zurich for more staffing and consulted with Zurich on estimated discovery expenses. *Id.* Two months later, in October 2020, the attorney and Carrick had a meeting to discuss strategy. *Id.* at ¶ 23. By this time, Zurich still had not denied coverage, and Carrick instructed Jose Pepper's to email all cost-of-defense bills to Carrick once the retention was exceeded. *Id.*

Over the next several months, the attorney continued to work with Zurich on the litigation defense. Doc. 13 at ¶ 24. In February 2021, Jose Pepper's began submitting the attorney's invoices to Carrick as instructed. *Id.* at ¶ 25. Meanwhile, the FLSA suit evolved to include new claims against Jose Pepper's and Gieselman. Still, Carrick collaborated on the litigation and a potential mediation plan. He reconfirmed that Zurich would be covering defense costs. *Id.* at ¶ 27. More invoices and more assurances followed. *Id.* at ¶¶ 28–31.

The case went to mediation in April 2021, with Carrick participating in the proceedings. Doc. 13 at ¶ 31. There, the FLSA plaintiff's expert report estimated potential liability in excess of $12,000,000. *Id.* at ¶ 32. Zurich offered to contribute $50,000 to a settlement. *Id.* The case did not settle then, but negotiations continued. Eventually, the parties reached a settlement figure within policy limits. *Id.* at ¶ 33. The Jose Pepper's attorney notified Carrick to demand that Zurich pay the settlement amount. *Id.* at ¶¶ 33–34. Zurich did not respond right away, despite repeated phone calls, emails, and letters by Plaintiffs. *Id.* at ¶ 37. Not until three weeks had passed did Carrick finally inform Jose Pepper's that Zurich was now taking the position that the policy did not cover the FLSA suit. *Id.* at ¶¶ 37–38. Jose Pepper's subsequently settled the suit within the policy limits but without any contribution from Zurich. *Id.* at ¶ 45.

Jose Pepper's alleges that throughout the year of litigation, Zurich never issued a reservation-of-rights letter or otherwise informed Jose

3

Pepper's that the policy might not extend to the claim. Doc. 13 at ¶ 39. Rather, Zurich assigned defense counsel, promised several times to pay for defense costs, and even agreed to contribute to a settlement. *Id.* at ¶¶ 27, 30, 39. Gieselman alleges that the unexpected denial of coverage caused him personally to suffer extreme stress and anxiety. *Id.* at ¶ 47. He had already been undergoing cancer treatments, of which Zurich was aware. *Id.* at ¶¶ 22, 83. Given his susceptible state, Zurich's conduct only worsened his physical and mental health. He was later diagnosed with anxiety and prescribed medication. *Id.* at ¶¶ 49–50.

Jose Pepper's and Gieselman sued Zurich in Kansas state court. Zurich removed the case, invoking this Court's diversity jurisdiction. *See* Docs. 1 & 16. In Count I of the Amended Complaint, Jose Pepper's claims that Zurich breached the policy by failing to settle the FLSA suit within policy limits when the opportunity arose and by failing to cover defense costs. Doc. 13 at ¶¶ 54–61. In Count II, Plaintiffs claim that Zurich must be estopped from denying coverage under the policy and from refusing to pay defense costs. *Id.* at ¶¶ 62–74. Specifically, Plaintiffs allege that Zurich made promises about the policy's coverage knowing that Plaintiffs would (and did) rely on those promises to their detriment. And in Count III, Gieselman seeks damages for intentional infliction of emotional distress and mental anguish caused by Zurich's sudden denial. *Id.* at ¶¶ 75–91. It is clear from the record that Kansas law applies.

Zurich moves to dismiss Counts II and III. It argues that the promissory estoppel claim is not actually an independent claim but is merely duplicative of the breach of contract claim, and therefore not allowed under Kansas law. For the emotional distress claim, Zurich argues that Gieselman seeks unavailable tort remedies based on a breach of contract. Alternatively, Zurich claims that Gieselman cannot satisfy the tort's outrageousness element.

## II

Zurich's motion to dismiss is granted in part and denied in part. It is denied with respect to the promissory estoppel claim because Plaintiffs may plead claims in the alternative. The motion is granted with respect to the intentional infliction of emotional distress claim because Gieselman has failed to plausibly allege that Zurich engaged in outrageous conduct.

### A

Promissory estoppel is "an equitable doctrine designed to promote some measure of basic fairness when one party makes a representation or promise in a manner reasonably inducing another party to undertake

some obligation or to incur some detriment as a result." *Peters v. Deseret Cattle Feeders, LLC*, 437 P.3d 976, 984 (Kan. 2019) (quoting *Bouton v. Byers*, 321 P.3d 780, 787 (Kan. Ct. App. 2014)). Estoppel applies only when a "court's refusal to enforce the promise would countenance a substantial injustice." *Bouton*, 321 P.3d at 787 (citations omitted). The doctrine is "closely related" to contract law, *id.*, but remains distinct from an ordinary breach of contract claim because estoppel does not depend on the existence of a contract.

Zurich argues that, in this case, these related doctrines amount to the same thing and that Plaintiffs may therefore proceed on only one theory. Doc. 19 at 5. In particular, Zurich asserts that a promissory estoppel claim is improper where the promises arise from a contract supported by consideration.[2] It cites two cases for this proposition: *Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154 (D. Kan. 1990), and *Decatur Cnty. Feed Yard, Inc. v. Fahey*, 974 P.2d 569 (Kan. 1999). Neither is availing at this stage of the proceedings. Although Kansas law governs the substance of Plaintiffs' claims, federal law governs their form in pleading. *See Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1279 (10th Cir. 2000). And the Federal Rules of Civil Procedure permit plaintiffs to plead multiple claims in a single action based on alternative theories of recovery. Rule 8(d)(2) allows a party to "set out 2 or more statements of a claim . . . alternatively . . . in separate [counts]." *See also W. Mach. Co. v. Consol. Uranium Mines, Inc.*, 247 F.2d 685, 686 (10th Cir. 1957); *Clark v. Green Tree Servicing, LLC*, 69 F. Supp. 3d 1203, 1222 (D. Colo. 2014) ("[Plaintiff] may plead a breach of contract claim and a promissory estoppel claim based on the same conduct or document in the alternative, although she may not ultimately prevail on both claims.").

At this stage, Plaintiffs are not required to choose whether to proceed under the policy—hoping that the policy's language is later found to support their position—or to proceed on a theory of promissory estoppel. Plaintiffs have alleged reliance on promises made by Zurich that may or may not be determined to fall within the contractual agreement. *See* Doc. 13 at ¶¶ 17, 23, 27, 31, 39, 62–74. If not, they are still promises that could give rise to a promissory estoppel claim. *See Team Indus. Servs., Inc v. Zurich Am. Ins. Co.*, No. 19-2710, 2021 WL 3771691, at *8 (D. Kan. Aug. 25, 2021) ("[Defendant's] argument on this point is premised on the Court accepting its version of the parties' contractual relationship, which is not proper at this stage of the case on a motion under Rule 12(b)(6).").

---

[2] Zurich does not argue that Plaintiffs have failed to allege facts sufficient to state a claim for promissory estoppel.

**B**

As for Gieselman's intentional infliction of emotional distress claim, Zurich makes two arguments. First, it contends that Gieselman's claim for emotional distress is an impermissible attempt to recover tort damages for a simple breach of contract.[3] Doc. 19 at 5–7. And second, even if the claim is for an independent tort, Zurich argues that Gieselman has failed to state a claim. *Id.* at 7–9.

Whether Gieselman's claim sounds in tort or contract depends on the "nature and substance of the facts alleged in the pleadings." *David v. Hett*, 270 P.3d 1102, 1114 (Kan. 2011). A breach of contract claim arises from duties imposed by contract, whereas a tort claim arises from duties imposed by law. *Id.* Zurich argues that the claim is based in contract and should fail because an action in contract is sufficient recourse for breach of an insurance policy. Doc. 19 at 6.

The claim sounds in tort. It arises from a duty imposed by law: the Kansas common law tort of outrage, or intentional infliction of emotional distress. *Valadez v. Emmis Commc'ns*, 229 P.3d 389, 394 (Kan. 2010). Gieselman has alleged facts of his individual emotional suffering purportedly caused by Zurich's long-delayed and sudden failure to indemnify him and his company after promising to do so. In other words, the claim is not based on Zurich's denial of coverage but rather the allegedly extreme *manner* of it. *See* Doc. 27 at 7.

Even so, Zurich argues that Gieselman cannot satisfy the outrageousness element of the tort. Intentional infliction of emotional distress involves extreme and outrageous conduct done intentionally or in reckless disregard of the plaintiff, which causes the plaintiff's extreme and severe mental distress. *Valadez*, 229 P.3d at 394. The threshold inquiry focuses on "[w]hether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery" and "whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it." *Roberts v. Saylor*, 637 P.2d 1175, 1179 (Kan. 1981). The conduct must be "beyond the bounds of decency" and "utterly intolerable in a civilized society." *Id.* at 1180–81.

The facts pled by Gieselman do not meet this standard. Nothing in the Amended Complaint rises to that level of extreme and

---

[3] Neither Zurich nor Gieselman contends that Gieselman was a party to the insurance contract, and Gieselman does not seek any relief under the contract.

outrageous conduct. Instead, Gieselman reiterates the facts about coverage denial, emphasizing its abruptness. But denying insurance coverage, even after stringing the insured along, is nowhere close to the "utterly atrocious or intolerable" conduct that Kansas law proscribes. *See Fusaro v. First Fam. Mortg. Corp.*, 897 P.2d 123, 131 (Kan. 1995); *see also W-V Enters., Inc. v. Fed. Sav. & Loan Ins. Corp.*, 673 P.2d 1112, 1122 (Kan. 1983) (collecting examples of conduct falling short of the standard, including harassment, unethical conduct, insults, and slurs). Gieselman's attempts to analogize to case law involving particularly susceptible plaintiffs or defendants in positions of power are not persuasive. Doc. 27 at 8–9 (citing *Dawson v. Assocs. Fin. Servs. Co. of Kan.*, 529 P.2d 104, 113 (Kan. 1974), and *Gomez v. Hug*, 645 P.2d 916, 922 (Kan. Ct. App. 1982)). Both cases are unpersuasive as both involved extreme conduct or power imbalances that did not occur here. There are no allegations that Zurich made harassing statements or threats to Gieselman or his family. Nor is there a unique power dynamic at play or an especially vulnerable party involved. To be sure, Gieselman alleges that Zurich was aware of his ongoing cancer treatments. Yet at its core, this is a dispute between a business owner and insurance company. There are no allegations that Zurich preyed on Gieselman's condition or that it factored into the denial in any way. At most, the complaint alleges that Zurich slow-played its denial or perhaps reversed its decision about coverage as its exposure grew. That is not enough.

### III

For the reasons above, Defendant's motion to dismiss, Doc. 18, is granted in part and denied in part. Count II may proceed. Count III is dismissed.

It is so ordered.

Date: July 13, 2022                         s/Toby Crouse
                                            Toby Crouse
                                            United States District Judge